*In re* JUAN QUIRÓS HERNÁNDEZ, Respondent.

No. O-67-413.     Decided January 24, 1969.

*J. F. Rodríguez Rivera, Acting Solicitor General,* and *Juan José Ríos Martínez* for The People. *Luis A. Archilla Laugier* for respondent.

JUDGMENT

## San Juan, Puerto Rico, January 24, 1969

On November 21, 1967 the Solicitor General of Puerto Rico filed a complaint against Mr. Juan Quirós Hernández preferring two charges[1] for immoral and illegal conduct repugnant to the canons of professional ethics. We designated Mr. Manuel A. Moreda Gómez, Judge of the Superior Court, San Juan Part, as master, and the latter, after receiving the evidence and hearing the parties, rendered the corresponding report which, in its pertinent part, states:

*"Findings of Fact*

"I.—In the month of June 1960 Juan Quirós Hernández was an attorney duly authorized to practice his profession in Puerto Rico. His office was open to the public in the town of Bayamón.

---

[1] "First Charge

"On June 25, 1960 respondent, Juan Quirós Hernández, wrote and endorsed a personal check against Banco Crédito y Ahorro Ponceño, Bayamón Branch, for the amount of $3,050. Under pretext and fraud that the check written by him was a valid negotiable instrument, he convinced Sergio Reyes to exchange said personal check for a manager's check issued by Banco Crédito y Ahorro Ponceño, which Sergio Reyes had received and had in his possession, respondent having received and taken possession of the aforementioned sum of money amounting to $3,050 for his personal benefit.

"The personal check having been presented for collection in said bank the latter refused to pay it because respondent had insufficient funds. Furthermore, respondent himself intentionally and voluntarily avoided every step for collection, thereby giving rise to an action of debt in the Superior Court, Bayamón Part, which court finally sentenced respondent in default to pay plaintiff Sergio Reyes the sum of $3,050 plus the costs of the proceedings including the sum of $350 for attorney's fees, which sums respondent still refuses to pay.

"Second Charge

"In the month of June 1960 respondent, Juan Quirós Hernández, taking advantage of the relations of attorney and client between himself and Julio López Abril and his wife Blanca Abril López, improperly and illegally appropriated to himself a check for the amount of $3,205.25 belonging to López Abril and his wife, which check was previously endorsed by the holder, Blanca Abril López, said attorney proceeding to endorse and cash the aforementioned check and to appropriate to himself its value in cash for his own personal benefit, thereby defrauding the aforementioned López Abril and his wife."

"II.—In the month of June 1960 Mr. Quirós Hernández visited merchant Sergio Reyes, from Bayamón, and requested him to cash for him a personal check amounting to $3,050. Reyes, who knew respondent as an attorney of Banco Crédito y Ahorro Ponceño, believing that the personal check would be honored by the bank on presentation, accepted, and delivered to Mr. Quirós a manager's check for $3,000 and $50 in cash. Quirós delivered to him personal check No. 100 dated June 25, 1960 issued against Banco Crédito y Ahorro Ponceño, Bayamón Branch.

"III.—The check was presented for collection on different occasions. The bank refused to honor it because Mr. Quirós' account did not have sufficient funds. On July 22, 1960, upon Reyes' request, the bank issued a printed note of the kind used to return the checks and it underlined the reason for returning it 'Refer to the Drawer.'

"IV.—Reyes brought an action of debt against Quirós in the Superior Court of Puerto Rico, Bayamón Part, Case CS 60-1125. He obtained a favorable judgment and was able to enforce it on some of defendant's properties. At the present time Quirós owes nothing to Reyes.

"V.—In June 1960 Julio López Abril and Blanca Abril López owed Banco Popular de Puerto Rico the amount of $3,325. The debt was secured by a mortgage. The bank was taking steps to collect and it threatened to foreclose the mortgage.

"VI.—In view of the threat to foreclose Julio López Abril visited Mr. Quirós Hernández and retained his services. He entrusted him to procure an extension for the payment of the debt while the funds were raised to pay the debt. Quirós accepted the commission and called Mr. Baragaño, the bank attorney, by telephone and offered to pay the debt within the term of ten days.

"VII.—As a result of his professional endeavor Quirós became aware that Bayamón Federal Savings and Loan Association of Puerto Rico had approved a mortgage loan for the amount of $3,225 in favor of Blanca Abril López and that said money was going to be used to cancel the mortgage constituted in favor of Banco Popular. Julio López informed respondent that the Bayamón Federal Savings' check was already written, but that he, Julio López, would not collect it until next week because he

was very busy. Quirós went to the bank to collect the check. From there he called Mrs. Abril López and asked her to authorize the bank to deliver the check to him. The lady explained to him that her husband was away and that she did not dare give her consent. Quirós told her that it was urgent to collect the check because the mortgage had to be paid before 3.00 p.m. In view of his persistence the lady authorized the bank to deliver the check to Quirós. The latter took it to Mrs. Abril López' house and requested her to endorse it. She explained to him that the money was not enough to cancel the mortgage, that they should wait for her husband who would be back soon. Quirós insisted on the urgency of the case, and he assured her that he would settle everything. He convinced Mrs. Abril López and the latter endorsed the check and delivered it to him with the understanding that it would be used to cancel the mortgage constituted in favor of Banco Popular.

"VIII.—Mr. Quirós did not use the money according to the instructions received and violating the trust deposited on him he used the money for his own benefit. Sometime later the . . . father-in-law of Mr. Quirós refunded part of the money to Mr. López Abril and his wife."

The Solicitor General objected to the finding of fact to the effect that respondent does not owe anything to Sergio Reyes at the present time. We have examined the evidence presented, especially the service of summons by the Marshal of the Superior Court, Bayamón Part, the foreclosure orders issued in civil case CS-60-1125 in said Part, and actually, from the original sum of $3,050 only $2,310 have been refunded to Reyes. The fourth finding of fact copied above is amended in that sense.

On his part respondent maintains in his report that, as to the first charge, the most rational and fair inferences of the evidence indicate that the transaction between Reyes and the respondent was a loan and not a mere exchange of checks as it is alleged; and as to the second charge, that the evidence presented was hearsay evidence, as it was timely raised at the hearing before the master, or it was not the

best evidence to establish the facts charged. These objections to the admission of evidence lack merit.

We are not going to decide the contention related to the true nature of the transaction which brought the first charge. We believe that the second charge was fully established and that the conduct charged entails respondent's disbarment. *In re Castro Figueroa, ante,* p. 310.

Finally we want to state our appreciation for the professional services rendered by Mr. Luis A. Archilla Laugier, who was designated to represent respondent.

The disbarment of respondent Juan Quirós Hernández and the elimination of his name from the roll book of attorneys of this Court are ordered.

It was so decreed and ordered by this Court as witnesses the signature of the Acting Chief Justice. Mr. Justice Santana Becerra and Mr. Justice Dávila did not participate herein.

(s) PEDRO PÉREZ PIMENTEL
*Acting Chief Justice*

I attest:

(s) JOAQUÍN BERRÍOS
*Clerk*